Mexico Garlic Growers v. United States Your time is up. You exceeded it by a minute. So let's move on and hear from the other side. So before we even start with the other side, I hope that the two of you appreciate that that was a mistake, a tactical mistake on your part. You don't divide up time like that. He was adamant. He's got three more cases. That was the point we wanted. At that point, you should have ceded your time, because he thought he had something really important that was clearly directly on point with what we wanted to talk about. Over here, I can't fathom for the life of me how three of you are arguing. Two are going to argue for one minute each. I expect you to stand up, tell me the name of the firm you're with, who else is at council table with you, and all the formalities. I will use your one minute that way, and then you will sit down afterwards. That is tactically crazy. It's not helpful to the court to do that. Go ahead. I apologize for that, Your Honor. I will address the question head on regarding the petitioner's argument. No, you didn't listen. You start with who you are, what firm you're with, and who else is at council table with you. I apologize, Your Honor. I'm with the defendant of the United States. My name is Ming-Yu Oh. I'm a trial attorney with the Department of Justice. I'll start, I guess, with what the central issue was that petitioners were addressing regarding their point of view that domestic production should decide the issue on standing. And I do want to point to 19 CFR 351.213, which we think defeats that point, because it specifically requires domestic producers to indicate why they want the review request. Do you have the JA site for the request that's at issue? I do. It's Appendix 143, I believe, and we cite it on page 10 in our briefing. Right, and I've been looking at that. I don't see any reference to why at all. I mean, it seems to me, tell me if I, tell me if there's something asserted there about why. Well, so it starts on 143. Yeah, it's about six sentences, so it's not very long. And then it actually continues, because it was actually part of a package. So if you go to, they attach a brief. Actually, I'm sorry, it wasn't part of the initiating petition. It came a few days later, because there they do express why, and that was starting on page 171. 171? 171, correct, Judge Toronto. And is this brief considered part of the request? I believe it's like supplementary information in support of the initiating petition, because it just came, I think, five days after the initiating petition. So they attach this 10-page brief. We highlight two points on Appendix page 172. The top of the page, the first full paragraph, NMG GC wants to take this opportunity to express why investigating Harmony is important to the ability of NMG GC and to similar garlic producers throughout New Mexico to compete in the fresh garlic market. So there they go on to extensively explain why, at least on the face of it, they are requesting the review. I do want to point out one thing, which we don't mention in our brief, because it did come up during the petitioner's argument. If you look at APPX page 179, which is the last page of their brief in support of their initiating petition, they go through great lengths to talk about Harmony and its affiliations with FGPA and about how that suspicious relationship should raise commerce's concern. And what they do when addressing their own interest is, this is the last sentence right before the conclusion. What page were you on? APPX 179. In this respect, the regulations make clear that the department may disregard views of domestic producers who are also importers of the subject merchandise and domestic producers who are related to such importers. I think right there, that kind of encapsulates this idea that if there's some type of questionable relationship... And it's citing Section 732C4Bii. What is that in 19 U.S.C. terms? I'm not precisely sure, I'm sorry. Well, because it matters whether we're talking about the petition or administrative review. Undoubtedly, at the petition stage, there's a massive inquiry, ultimately decided by the International Trade Commission, about the domestic industry. There's no such inquiry at the administrative review. If this is about the initial, you know, anti-dumping duty petition stage, it would be significantly more limited. So, in the petition stage, Judge Chirante, you are correct that the ITC, the International Trade Commission, does regularly go behind the face of the petition to look at the credibility of the domestic interested parties' interest in the review petition itself. But we think that the law makes clear that that same interest is important during the credibility determinations for the administrative review process as well. And we think it would be a bit unusual if you can only ask that question in the first instance regarding the initiation of the anti-dumping duty order, but then you can no longer make that inquiry for administrative reviews of that order. We think that would be a disconnect. And two authorities that I think would be helpful to the court in this regard, and that's kind of been the law before the trade court in Shandong Rongxin and the Brothers case that we cite in our brief, I think it's page 43 of our brief, where they do talk about the legislative history behind the domestic interested party statute with respect to this case. And the 732 is in fact 1673A. It is. So it's actually not about the administrative review. It's about the petition. Correct, Judge. But the case law makes clear, and the legislative history makes clear that the why actually is important because the reason why the domestic interested party provision was phrased as the way it was was because they wanted to ensure that parties that had no stake in the result of the investigation wouldn't be filing petitions that would eviscerate commerce's resources when it could be better spent on other issues that they had to address. Why isn't I produce garlic here isn't enough to give them a stake under the statute? Well, in addition to that, under the regulation, they would have to state the why. So 19 CFR 351.213B says, okay, so you are a domestic producer, and then it says in the conjunctive, what is your interest? So you actually have to say, I am a domestic producer, and here's my interest. Do you also have the view that the validity of that piece of the regulation has not been challenged here? It has not been challenged, Judge, and I think the briefing will show that. And that's actually what we rely on because at the end of the day... I'm sorry, just to complete it. So the issues and decisions memo says, here are the three things that we think were lied about. Do some of those appear in this document, or are they other things? The falsehoods. The falsehoods. I'm sorry. Isn't there a one, two, three in the issues and decisions memo that says here are the three assertions which we're gathering from and there's a whole lot of little footnotes citing to letters and things. There are three assertions that Commerce said you lied about these things when you made these assertions. Are any of those assertions in this document, 171 to 179? Doesn't that kind of matter under the regulation? I think it would, but I think it's actually a progressive issue throughout the entirety of the review. It was baked into the entire review. If we're talking about what they're stating their interest is. Here's what I guess I'm trying to focus on and why I came to this. Your brief makes a very broad brush argument. We have inherent authority to respond to lies to us. Even if, under this broad brush theory, the lies are immaterial and even if when we respond under 1677E by getting rid of every credibility-based piece of evidence from the liar, the fact, the only facts relevant, remain established. It seems to me the one possibility of your having a narrower position than that is the regulation, the one that we have discussed. It might matter whether the lies were in the document covered by the regulation. As opposed to other things. I think one case that might be helpful would be the American Society for Prevention of Cruelty to Animals that we cite in our brief. Where the D.C. Circuit actually evaluated the question of standing under the Endangered Species Act. I recognize it's a different statute, but again, it's a statutory-based standing. We're also dealing with statutory-based standing in that case. In that case, the parties proceeded all the way to trial. Where it was the trial judge that held after observing the witness on the stand that his interest in the review under the Endangered Species Act, because he was a paid plaintiff, because he insistently lied, because his motivations were questionable, the court at trial said, you no longer have standing. So the standing inquiry isn't necessarily limited just to the initiating petition. Right, but what I'm having trouble with, it seems to me, let's assume for purposes of this question, that there is evidence from Harmony establishing beyond any doubt that the New Mexico growers produced a like-kind product. Standing done over indisputable. Let's assume that that's right. Nevertheless, we've been discussing quite a lot this morning about this piece of the regulation that says, you have to tell us why. Which it seems to me, cannot meaningfully go to standing in the statutory sense, interested party. But nevertheless, an unchallenged regulation is a communication that the agency is interested in this subject. Right. And that regulation says, tell us why in this document. Was there a lie in this document? And to be fair, I don't think the agency treated the regulation as limiting them only to one document. I think if they're going to say, what is your interest in the review? And at the heart of it, that interest could evolve or change throughout the course of the review. And at those various points, if the stated interest during the course of the review is undermined by the record evidence, Commerce should have the ability, broad-based authority, to say, you've repeatedly lied to us. You've undermined the integrity of the proceedings. And to get to that conclusion, they relied on that TKS line of authority that says... Right, but TKS and Alberta were very specifically about the foreign producer or exporter. He was. Whose assertions about either affiliation with a government-wide entity or what they did were absolutely the central issue in the administrative review. Or, yes, in TKS, Alberta Gas was not an administrative review. It was the initial proceeding where the domestic party's effect on domestic industry was crucial. We don't have either of those two things. We have the filer of a request under 1675 who apparently, beyond dispute, meets the statutory standard of producing domestic-like product. Right, and I believe that Commerce did not question that part of it. What they did was, they said under the regulation, it's two-pronged. It's domestic production and interest in the review pursuant to the regulation. And when they found that... I'm sorry, the regulation doesn't say some interest more than domestic-like product. It just says, tell us honestly why you desire the review. And it seems to me it's perfectly possible to lie about your statement, why, without that statement being a false statement if it was yours. In other words, I'm going to keep using this word, it was a contrived assertion even if it was a true assertion about the underlying interest that there could have been, but it wasn't your real interest. You had a different interest. Right. But the way the regulation is stated is actually in the conjunctive. It's and. So it can't just be redundant of the previous statement where that you must be a domestic producer, which also means you have an interest in the review. It says you must be a domestic producer and you must also state what you're interested in the review. So we think that the regulation is best read as two separate requirements, which is why I think NMGGC understood that and also supplemented. With all of that kind of legal superstructure around it, I mean, you may have answered this, in which case I'll just say it again so that I remember. Is there a lie in the document 171 to 179? We think that this stated interest regarding the review of Harmony on behalf of a domestic, a purported domestic interested party in totality is false because what the record evidence shows is that NMGGC was consisting of paid plaintiffs who were discovered by an attorney representing Chinese garlic clients looking for domestic parties to essentially stand in the shoes of a domestic producer to essentially request a petition that they couldn't have otherwise requested because foreign exporters aren't allowed to petition commerce to begin a review of a foreign exporting rival. But Crawford and Katz could have. If they were independent, yes, they could have. If they joined up and called themselves the New Mexico Garlic Group. And to be fair, Judge Toronto, I think if those were the facts of the case, commerce probably wouldn't have dug that deep because the record evidence wouldn't have shown this treasure trove of documents showing an intent to manipulate commerce's review process. At the end of the day, that's what this case is about. Commerce needed to affect the statute and use this case's authority regarding TKS and home products to defend the integrity of its review process. If reviews are like this is allowed, we're basically inviting other parties to undermine commerce's review authority. And we think that Congress never intended that outcome. I see that my time is up. We respectfully request the court affirm the judgment of the trial court in this case. Thank you. They got a lot more people coming, I think, Mr. Herman. Good morning. May it please the court, John Herman with Kelly Dry and Warren on behalf of the Appalese Fresh Garlic Producers Association. Since my time is short, I'd like to refer the court to one portion of the regulation, 351.213.B.2. That is the portion of the regulation that states that a foreign producer or exporter may only request a review of itself. What's going on here is that you have, as counsel for the United States just indicated, you have a purported domestic producer standing in the shoes and putting forward a review request on behalf of a Chinese entity that it otherwise would not have been able to make. With respect to your question, Judge Toronto, regarding whether there were any misrepresentations in the request for an administrative review, I would say yes, absolutely. You mentioned the three findings that the Commerce Department made in its issues and decision memo, the first of which was whether Chinese exporters and businessmen were involved in the NMGGC review request. That clearly was the reason that the request went forward. If you look at the administrative record, thank you very much. I'll let you go over, Mr. Marshak. Ned Marshak on behalf of Harmony, Your Honor. There were lies in the request and the second letter on appendix 174, 175. There was a claim, quote, during the 20th A.R., Mr. Crawford was scared off when we threw his request at the Department of Review Harmony if the private investigators returned to inspect his facility and prior to his business. That's one of the three lies. That's in appendix 174, 175. Second, in the original request, Mr. Montoya on behalf of the NMGGC said, the undersigned is handling this case independent from any member of this firm for the purpose of avoiding the appearance of a conflict of interest. That was the second law, Your Honor. He was handling it under the direction of Mr. Yu, who was counsel for the QTF entity and the CIT actually looked at that. That one wasn't one of the three, but it was very, very critical. This case was handled on behalf of the QTF entity. It was not independent. It was always on the behalf of the QTF entity, the Chinese exporter, and they were the real parties of interest. So in the original document, the original document, you have two flat-out lies. Thank you, Your Honor. Mr. Marshak and Mr. Alonzo, we'll give you two minutes of rebuttal time. Thank you, Your Honor. I did find the answer to the one question notably from Justice Toronto. In the CIT opinion, APPX33, the Justice, the Judge Barnett states the why that was listed by Mr. Crawford as follows. Why investigating Harmony was important to the ability of the coalition and to similar garlic producers throughout New Mexico to compete in the fresh garlic market. This is from Judge Barnett, APPX33, to compete in the fresh garlic market, which, of course, makes sense for a garlic farmer, which, of course, Mr. Crawford is. Now, the Shandong case is mentioned by... Just to be clear, the letter from 171 to 179 introduces its reason for being as stating the reasons why we're participating, which suggests that every word that follows is also about that subject, including the words about being scared off Administrative Review 20. The actual review is... Which is one of the express issues and decisions specified lies. Your Honor, the actual review is 143-144, APPX143-144. That doesn't contain a statement of why at all, not a word, does it? That I'm not sure about. That I'm not sure about. I thought that was what Judge Barnett was quoting here from the opinion. But perhaps, perhaps he's actually referring to... The 171 is a supplemental filing that comes after the initial review request. And I don't know whether 143 and 144 actually... It's the supplemental comments. It's the 171 and 179 that Judge Barnett was quoting. Okay. And that's where he's listing the why being to compete in the fresh garlic market. That's what he's identifying in his final decision. That's what he's looking at is the why. Which we believe is not only true, but actually doesn't matter. Because again, there's no requirement anywhere that there be a motive. Now... And I can actually speak about that, but there's not really enough time. I'm gonna move to the Sheng Dong case, which the U.S. brought up. The Sheng Dong case does not require a stake for a domestic producer. It talks about a stake in the limited context of an initial petition for a review request. I'm sorry, an initial petition to establish an anti-dumping duty order. Which is under a separate section than the annual review request that come along later after the order's in place. So that's why Sheng Dong does not support any need for a stake. Thank you, Mr. Alonzo. You've exceeded your time again. Thank you, Your Honor. We thank the lawyers. The case is taken under submission.